# DANIEL C. JOSEPH *vs.* CHARLES J. BONAPARTE.

*Ejectment*: *burden upon plaintiff. Deeds*: *dates; proof; admissions. Evidence*: *when refusal of proper—not ground for reversal.*

A plaintiff in ejectment can not recover unless he shows a legal title and right to possession, not barred by the statute of limitations. p. 593

He must recover by the strength of his own title and not by reason of the weakness of that of the defendant. p. 596

Since Chapter 177 of the Acts of 1852 (Code, 1888, Article 75, section 76), it is not necessary to show a patent for the land; such patent is always presumed in favor of a party showing a title otherwise good. p. 594

The rule requiring the plaintiff to show a legal title is gratified by a title *prima facie* good. p. 594

Title by adversary possession is sufficient to support an action of ejectment. p. 595

In an action of ejectment deeds are not admissible in evidence which do not tend to show any title to the land sued for. pp. 597-598

It is not reversible error to refuse to admit in evidence a deed which was offered for the purpose of proving dates, when the dates have already been proven by the admission of the opposite party. p. 598

*Decided November 14th, 1912.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Edwin T. Dickerson,* for the appellant.

*William Reynolds and Charles J. Bonaparte,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This appeal presents for review five exceptions taken by the plaintiff in the course of the trial below to rulings of the trial Court—four of which relate to questions of evidence, and one to the action of the Court upon the prayers.

The suit was an action in ejectment instituted by the appellant against the appellee to recover two lots of ground situated on the east side of Woodyear alley, in Baltimore City, and which are described in the declaration. The fifth exception was taken to the action of the Court in rejecting the plaintiff's prayers, and in granting a prayer by which the jury were directed to find a verdict for the defendant upon the ground that the plaintiff offered no legally sufficient evidence under the pleadings to entitle him to recover. This exception presents the most important question in the case, and for that reason, and for the further reason that in passing upon it we shall necessarily say some things applicable to the other exceptions, that one will be first considered.

The suit was brought on May 2nd, 1911, and to establish his title to the lots described in the declaration the plaintiff proved:

1st. That the lots were conveyed to him by William Caspari, Jr., and wife by deed dated March 20th, 1911.

2nd. That the lots had been conveyed to Caspari and wife by Lewis H. Reitz and wife by deed dated April 10th, 1894.

3rd. That Reitz had acquired title to the lots by two deeds to him;—one from Joseph M. Cone and wife, dated

February 7th, 1876, and one from Samuel Snowden and wife, dated January 18th, 1876.

The plaintiff's evidence also showed that he has never been in possession of the lots, and that at the date of the deed to him from Caspari and wife the defendant was in possession of the property and had been in possession of it since 1894 and possibly at an earlier date. There is no evidence to show that Joseph M. Cone, or William Caspari was ever in possession of the property. He proved that Lewis H. Reitz was in possession of the lots at one time; but when his possession began, or how long it continued the record does not show.

Assuming that there was no error in the rulings of the Court prejudicial to the plaintiff upon the evidence, we are of opinion that the lower Court was clearly right in withdrawing the case from the jury, because the plaintiff had proved no title to the lots upon which an action of ejectment could be maintained. Unless the plaintiff in ejectment shows a legal title and a right to possession, not barred by the Statute of Limitations, he cannot recover in ejectment under the settled law of this State, no matter what may be the rule in other jurisdictions. In 1 *Poe Pl. & Prac.* (4th ed.), sec. 260, it is said: "Three leading rules are enforced in the trial of ejectment causes: *First*: *The plaintiff can not recover upon simply proving that his title is stronger or less defective than that of the defendant;* nor is it enough for him to show that the defendant had no title whatever, or not so good a one as his own, for the decision of the case does not turn upon any such comparison. He must recover, if at all, upon the strength of his own title, and not by reason of the weakness of that of the defendant, and, therefore, the defendant may always defeat the action by proof of a clear subsisting title in a stranger. This has always been an established principle of ejectment law in Maryland. *Second*: *The plaintiff must show that he has a legal title to the land.* Formerly, this could only be done by deducing a chain of title by patent from the State, except in cases where plaintiff and defendant both claimed under the same original

title, beyond which it was not necessary to go. The enforcement of this rule was often attended with inconvenience and expense, and finally it was dispensed with altogether by the Acts of 1862, Ch. 177, sec. 2, embodied in the Code (1888), Article 75, section 76, which provides that 'in all actions at law where the title to land is in question, it shall not be necessary for any party to any such action to prove that the lands in controversy have been patented; but a patent shall in all cases be presumed in favor of the party showing a title otherwise good.' The rule requiring the plaintiff to show a legal title is gratified by proof of a title *prima facie* good."

There are some exceptions to the general rule, which are stated by Mr. Poe in Section 262; but these need not be here considered, because they are not involved in this case.

Two propositions it must be admitted are thoroughly well settled in this State in the law of ejectment; first, the plaintiff can recover where he deduces title from a patent granted by the State and proves his right of possession; or where he shows a good title by adversary possession. These principles are too familiar to need citation of authority to support them, but upon neither of these principles was the plaintiff entitled to recover in this case, because he showed neither a patent, nor adversary possession. But it is insisted that the proof offered makes out a title "otherwise good" within the meaning of the Acts of 1852, Chapter 177, section 2.

Prior to the Act of 1852, whilst the *general rule* in an action of ejectment was that the plaintiff must show a grant from the proprietary or the State, there were exceptional cases in which he might show a *prima facie* title, or a title "otherwise good" without producing a patent for the land or a certified copy thereof. Varying conditions of fact from which such a title might be shown, in the absence of proof of patent, appear in the adjudged cases. For example, he might show by proof that both he and the defendant claim under the same original title, or that he and the defendant had submitted to arbitration their respective claims

to the land and that the award had been in favor of the plaintiff; or he might show a valid title by adversary possession; or, as stated in *Plummer* v. *Lane,* 4 H. & McH. 73, "a seisin of the land, and a dying seized of the person under the lessor derives his title, and a regular title from the person dying seized."

It is said in *Cockey* v. *Smith,* 3 H. & J. 20, that: "In actions of ejectment to recover the possession of land, it is incumbent on the plaintiff to show a grant of the land from the proprietary. To prove such grant he must produce the patent, or a copy of the same. This is the general rule, and must be generally adhered to, because there can be no recovery in ejectment without showing a legal title in the plaintiff, which cannot be done without producing a grant from the proprietary."

"The cases in which this general rule has been deviated from and in which secondary evidence has been resorted to, and admitted, for the purpose of obtaining the direction of the Court to the jury to presume and find a grant, rest on strong facts and circumstances, evincing an equitable right to the land—an incipient title from the proprietary, and length of possession in conformity thereto—*mesne* conveyances and wills, transmitting the right from the taker up to the plaintiff."

"In actions of ejectment the producing the grant of the proprietary is the first step in deducing title."

"If that is wanting, and inferior testimony is resorted to for presuming a grant, the foundation must be laid by stating and combining all the facts and circumstances existing in the case, on which the prayer to the Court is to be made for their direction to the jury, to presume and find a grant."

The reference in the opinion to "facts and circumstances evincing an equitable right to the land—an incipient title from the proprietary, and length of possession in conformity thereto—*mesne* conveyances and wills, transmitting the right from the taker up to the plaintiff," evidently refers to and applies to such cases as *Plummer* v. *Lane, supra,* and *Carroll*

v. *Norwood,* 5 H. & J. 155. In the case last referred to, the person from whom the plaintiff deduced his title had obtained a certificate of survey and had paid the composition money; but the grant was not issued to him until after his death. He devised the land mentioned in the certificate to his three sons. He and his sons, and those claiming under them, took possession of the land and held it from 1723 to about the year 1797. In dealing with state of facts, the Court said: "Every fact in the case, on which the direction to the jury was prayed, existed independent of the void grant which issued to John Israel, and at the time it did issue the three sons were entitled to it, and not John Israel, who was dead. Hence there is a clear equitable title shown in the sons of John Israel, and deduced from them to the lessors of the plaintiff, and a position held in conformity thereto from 1723 until within ten years before the institution of this ejectment." See also *Lloyd* v. *Gordon,* 2 H. & McH. 254.

In *Mitchell* v. *Mitchell,* 1 Md. 44, JUDGE ROBINSON said: "The general principles of ejectment law in Maryland, have been settled by long series of unvarying decisions, and cannot be disturbed by this Court, however hard may be their operation in particular cases. Among these is that the plaintiff must recover, if at all, on the strength of his own title, and cannot do so because of the weakness of that of the defendant. Another is, that he must show that he has the *legal* title *and* a right of possession, and that he cannot establish such legal right in himself, without first showing the land has been granted by the State. The cases of *Hall* v. *Gittings,* 2 H. & J. 125; *Wilson* v. *Inloes,* 11 G. & J. 358, and *Cockey* v. *Smith,* 3 H. & J. 26, are full on these points. They merely affirm what has always been the law of Maryland."

It is quite evident from an examination of the facts in *Warner* v. *Hardy,* 6 Md. 525, upon which the plaintiff relies in support of his contention that the evidence offered shows

a title "otherwise good," that, apart from title by patent, the plaintiffs had shown a title otherwise good within the principles of *Plummer* v. *Lane, supra,* and *Cockey* v. *Smith, supra,* and that for this reason the defendant's second prayer was held to have been rightly refused.

Tested by the principles to which we have referred, the plaintiff has proven no title to the lots that would enable him to recover under the law of this State, and when the other exceptions are examined in the light of these principles they disclose no error in the rulings embraced therein, because none of the facts excluded by the Court tend to establish a legal title in the plaintiff.

The plaintiff's first and fourth exceptions present the same question, and may be considered together.

It is shown by the first exception that the Court refused to permit the plaintiff to offer in evidence a certified copy of a deed dated May 17th, 1894, from William Reynolds, Trustee, to the defendant, granting and assigning to him two leasehold lots of ground on the west side of Carey street, in the City of Baltimore. This deed was made by authority of a decree of Circuit Court No. 2 of Baltimore City, passed on the 24th day of May, 1892, in the case of *Charles J. Bonaparte* v. *Lewis H. Reitz.* The lots sued for are not, nor is any portion thereof, included within the descriptions contained in the deed, and the deed in no way relates to the title of the lots in controversy.

In the fourth exception it appears that the plaintiff produced the original deed mentioned in the first exception. The defendant objected to the introduction of the deed in evidence; but admitted that a decree for the sale of the two lots granted by the deed to the defendant had been passed by the Circuit Court No. 2 of Baltimore City on the 24th of May, 1892, and that the trustee's deed to him therefor was dated May 17th, 1894. Upon these admissions being made, the Court refused to permit the deed to be read in evidence.

The ruling in each of these exceptions was correct: first, because neither the deed, nor the certified copy thereof

tended in the remotest degree to show title in the plaintiff to the lots sued for; and secondly, because the admissions made by the defendant as to the dates of the deed and the decree of foreclosure dispensed with the necessity of showing those dates by the introduction of the deed.

The second and third exceptions also present the same question. In the second exception it appears that the plaintiff offered to prove that at an interview between himself and the defendant and by some correspondence between them, that the defendant said he was holding the two lots sued for, and was going to hold them, until somebody proved a better title and that he had no title to the lots.

In the third exception it is shown that the plaintiff identified the following letter:

"DEAR MR. BONAPARTE:

Mr. Manning and Mr. Reynolds as I understand it admit that they have simply taken possession of the property, although they hold no title and feel as though they should hold it until a better title is proved by someone else. I felt it my duty (as a younger member of the bar and also as somewhat of a ward of yours, having adopted you as a sort of guardian *ad litem*) to see you before taking action. Is their statement final?

DANIEL C. JOSEPH.

Yes; go ahead. C. J. B."

He further testified that he wrote the part signed by him in the defendant's office down stairs; that he could not go up stairs to see the defendant; that the letter was written in the presence of Mr. Manning, who is the agent of the defendant, who is in the defendant's office and does some work for him; that the letter came back to him with the little notation at the bottom. The plaintiff thereupon offered said letter and notation thereon in evidence; but upon objection by defendant the Court refused to permit them to be introduced into evidence.

Counsel for the plaintiff has cited a number of cases from other jurisdictions for the purpose of showing that the evidence embraced in the second and third exceptions is admissible. But until he showed a good legal title to the land, he had no right to inquire into the character of the defendants holding. He must recover on the strength of his own title, and if his evidence on that point failed, his whole case failed, no matter what the defendant's title may be. Had the plaintiff proved a good *prima facie* title to the lots, or had Mr. Bonaparte been called upon to show title by adversary possession a different question would have been presented. For the reasons stated the judgment appealed from will be affirmed.

*Judgment affirmed, the appellant to pay the costs above and below.*