## Mitchell's Lessee, *vs.* Mitchell.

In an action of ejectment in Maryland, the plaintiff must recover, if at all, on the strength of his own title, and cannot recover on the weakness of that of his adversary. He must also show, that he has a *legal* title to the land, and the right of possession. He cannot establish such legal title in himself, without proof of a grant by the State.

This is an action to recover a tract of land called Myrtle Grove, situate in Charles county. The appellant produced no patent for the land, but relied upon his possession, as admitted in a statement of facts agreed to by the parties. According to this statement, Francis J. Mitchell obtained possession of Myrtle Grove, (which, it is admitted, is correctly located on the plots,) in 1817, and held the same till the time of his death, in 1825; and, immediately after his death, his son, James D. Mitchell, his devisee, entered upon and possessed the land until his death, in 1837. Immediately after his death, his widow Elizabeth, (as devisee for life under his will,) entered and possessed said land until her death, in 1841, and plaintiff's lessor is the sole sister of the whole blood, and heir at law to said James D. Mitchell; that the tract of land as located, was reputed and known by the name of Myrtle Grove, and is situate on Matawoman run, and the possession of the same, from 1817 to 1841, was continued, peaceable, exclusive and uninterrupted, and adverse to all persons. The defendant, who was half-brother of said James D. Mitchell, entered on said lands at the death of Elizabeth Mitchell, declaring that it was his son's property, and

that no other brother or sister survived the said James D. Mitchell.

Pleas, not guilty and defence on warrant.

Verdict was for defendant, and the court having refused to give the instructions asked by the plaintiff:—1st. That if they believed, that the tract of land, Myrtle Grove, was held and possessed by those under whom the plaintiff claims for more than twenty years prior to 1841, then there is no necessity for the plaintiff to show a patent for said land. 2nd. To entitle the plaintiff to recover, there is no necessity to show that the land was patented, provided the jury find twenty years' possession in those under whom the plaintiff claims prior to the institution of the suit. 3rd. If the jury find from the evidence, that Francis J. Mitchell possessed the land in dispute from the year 1817 till the time of his death, in 1825, and that immediately upon his death, his son and devisee, James D. Mitchell, possessed the same until his death, in 1837, and that immediately after his death, his widow, Elizabeth Mitchell, possessed the same until her death, in 1841, and that the possession aforesaid was continued, peaceable, exclusive and uninterrupted; and that the plaintiff is the sister of the whole blood of James D. Mitchell, and that he died without issue, having no brother or other sister, then the plaintiff is entitled to recover.

Each of these instructions the court refused to give. The plaintiff excepted.

This case was argued this term before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

By R. J. Brent and May for the appellant, and Digges and Causin for the appellee.

Brent for appellant.

In 2 Gill, 230, Mitchell vs. Mitchell, it will be seen how the appellant claims title in this case. She was the sister of James D. Mitchell, of the whole blood, and, according to the decision in 2nd Gill, the heir at law.

The appellee claims by possession. If the defendant shows a possession, but for a less period than twenty years, it only requires the plaintiff to prove a better right by antecedent possession. 10 *John.*, 356. 2 *Serg. and Rawle*, 57. *Dorsey's Eject. Law.*, 31, 32, 33, says, there are conflicting decisions in New York and in England, but none in Maryland.

The case 4 *Burr.*, 2487, to which Dorsey refers, does not overrule the cases, which he insists that it does. It decides only, that the plaintiff must recover on the strength of his own title; nor does 2*nd Term Rep.*, 749, sustain him.

1 *H. & McH.*, 172,–'3. No evidence of a patent here. See 2*nd H. & J.*, 122, *Hall vs. Gittings.* 7 *Wheat.*, 105. Possession *prima facie* evidence of title. 4 *Wash. C. C. Rep.*, 693. 4 *H. & McH.*, *Plummer vs. Lane. McHenry on Ejectments*, 115. 1 *H. & J.*, 510, *Mitchell and Gover.* 7 *G. & J.*, 69.

3 *H. & J.*, 468, *Mundell vs. Clark.* The question was, what facts would authorize a presumption of payment? *Dorsey on Ejectment Law*, 97, 98. 6 *Peters*, 622. 14 *Peters*, 334.

1818, ch. 90.

Five modes of granting land in Maryland. See *Dorsey's Ejectment Law*, 85.

Since the act of 1818, ch. 90, no warrant can be issued by the State, if the land has been twenty years in the possession of any one.

2 *H. & McH.*, 139. A distinction between records and matters in pais, as regards the lord proprietary. See 1*st H. & J.*, 81. 3 *H. & J.*, 531.

*McHenry on Ejectment*, 117. 7 *Cow.*, 201. An outstanding title to defeat a plaintiff, must be a living active title.

4 *Wash. C. C. R.*, 693. Proof of dying seized by a testator, is sufficient, without showing a grant from the State, until some proof is adduced by the other party to controvert the title of the plaintiff. Mr. Brent also gave a reference to *Greenlf. on Ev.*, 17*th sec. Matthews on Presumptive Evidence*, 9, 11, 12, 195, 196, 202, 203; and 197, 202, as against the Crown. 6 *Peters*, 513. 6 *G. & J.*, 142. Patents and

deeds on the same footing. 3 *H. & J.*, 468. Necessary to show an equitable title under a warrant, to authorize the presumption of a patent. This was to resist the authority of the patents produced by the plaintiff.

Two patents will not be issued for the same land. *Bland, Chancellor,* 12th *G. & J.*, 227.

1 *H. & G.*, 443. A tract of land may acquire a name different from the patent name. In 3rd *H. & J.*, 26, it is said, that in every case the plaintiff must show a patent. This may be, but it may be done by presumption from possession. 5 *H. & J.*, 476.

We rely upon a presumption of a patent from twenty years' possession, and not upon the doctrine in New York and England, of a prior possession of less than twenty years.

1818, ch. 90. This is an act to quiet possession.

*Dorsey on Eject. Law.*, 94, (*note.*)

2nd *H. & J.*, 112. Escheat warrant is presumptive evidence of title in the State.

The act of 1818, ch. 90, should be construed as liberally as the statute of limitations has been construed.

Act of 1839, ch. 34, passed when the persons under whom the plaintiffs claim, had had possession twenty-two years; and although repealed by act of 1841, ch. 333, yet any right acquired by the first act, was not destroyed or affected by the repeal. 2 *South'ds Reports*, 689. 2 *H. & J.*, 41.

The act of 1839, is a supplement to that of 1818, and gave full title against the State, even although the survey which that act provides for was not made.

2 *Howard's Reports*, 344, *Grignan vs. Aster.* Confirmation by statute is as strong as grant. See 12th *Peters' Rep.*, 454, and 6 *Peters*, 312.

As to the generality of the prayer presented, this is no point under the act of 1825. 2 *G. & J.*, 302. 3 *G. & J.*, 369. 5 *G. & J.*, 511.

*Digges* for appellee.

Declaration 4th March 1845. Demise laid 1st May 1842. Pleas, not guilty and defence on warrant. The first prayer,

it was certainly right to reject, if only because it does not assume, that the possession was adverse. The prayers do not embrace all the testimony in the case. See 4 *G.*, 422. 3 *G.*, 31. 11 *G. & J.*, 367. 4 *G. & J.*, 1.

As to 1st and 2nd prayers, and the necessity of a patent: 3 *H. & J.*, 20. 2 *G. & J.*, 114. 11 *G. & J.*, 351. 7 *G. & J.*, 61. 3 *H. & J.*, 462. 4 *H. & McH.*, 73. The prayers should have been, that the jury might presume a grant.

Act of 1818, ch. 90, relates to warrants issued since the act, as is seen by the proviso. The law is for the benefit of defendants, to quiet *possessions*.

The appellant is not within the provision of 1839.

As to presumption: 5 *H. & J.*, 476.

If the instruction be too general, the court can neither affirm nor reverse the judgment, but must dismiss the appeal. 2 *G. & J.*, 302.

*May* for appellant, cited *Bell vs. Linn*, 6 *H. & J.*, 351, and 11*th East.*, 486, *Parker vs. Badwin*, as to grants from the Crown being presumed.

*Causin* for appellee,

The possession admitted is as much adverse to the plaintiff as to the defendant. The defendant in this case was in possession, claiming title. The plaintiff was never in possession herself. The fact of the defendant's possession is not noticed in the prayer.

In ejectment a patent must be produced. 1 *H. & J.*, 510. 3 *H. & J.*, 26.

7 *G. & J.*, 69, decided since the act of 1818.

*Brown on Actions at Law*, 470, 471, in 45*th Law Lib.* Plaintiff must recover on the strength of his title.

2 *Saund.*, 111, *Adams on Ejectment*, 32.

2 *Bing.*, 346, in 20*th English Com. Law. Rep.*, 126.

The possession of defendant is a presumption of title, and cannot be disturbed but by a rightful owner. The plaintiff must have the legal title and the right of possession.

Limitations never did bar the lord proprietor, and his rights were less than those of the State.

3 *H. & J.*, 521, *McHenry on Ejectment*, 172.

A deed may be presumed, but a grant by the State cannot be presumed from possession, unless accompanied with some equitable circumstances of title.

*Dorsey's Law of Ejectment*, 98.

What facts will authorize such presumption, is a question for the court. 5 *H. & J.*, 475.

Possession, with claim of title, is presumption of title. 7 *Wheat.*, 105. Here the defendant is shown to be in possession and claiming title.

8 *Serg. and Rawle*, 484. But in Pennsylvania, an equitable title will maintain an ejectment,

The act of 1818, ch. 90, was passed to protect the person in possession, against those who would disturb their possession by a grant from the State, after the person in possession had possessed it more than twenty years.

Proclamation and escheat warrants are not barred by the act of 1818, ch. 90. Not the State, but the grantees of the State, are barred. Escheat land to be barred in the same way, by act of 1849, ch. 424.

The State is not, by construction, to be deprived of her revenue arising from vacant land.

*May* for appellant.

Judge Dorsey, in his law of ejectments, says, that the main question in this case has not been decided.

Not necessary always to include all the testimony in an exception. 1 *Gill*, 143.

The defendant held but four years before the suit was instituted. The contest here is between individuals. The State is not concerned. The first possessor has a right to recover from an intruder. This is common law doctrine. If it has ever been overruled in Maryland, the act of 1818 restores this doctrine of the common law.

Priority of title by possession.

7    v.1

*Brown on Real Actions,* 45 L. L., 333.    *Roscoe on Real Actions,* in 29 L. L., 98, &c.    *Butler's Nisi Prius,* 103.    The possession of an ancestor will avail the heir.    7 *Bing.,* in 20*th English C. L. Rep.,* 156.

There is great difficulty in ascertaining ancient boundaries; an intruder may defeat any one's title, if the doctrine of the appellee prevail.

For presumptions from evidence:    See *Best on Presumptive Evidence,* in 47*th Law Lib.,* 32, 68, 76.    *Matthews,* 4, 6, 7.    7 *Wheat.,* 106.    6 *H. & J.,* 336, 351.    This last case explains all the cases cited on the other side.

The law of ejectment in Maryland, differs from that in England, only in locations.

5 *G.,* 322.    If the defendant controverts the plaintiff's location, he must counterlocate it; or, if he would show title in a third party, he must locate that title, or he cannot give it in evidence.

The statute James only barred the entry, and yet that statute was construed to give a person title after twenty years. We claim a similar exposition of the act of 1818.

The act of 1839, ch. 304, was only cumulative.

LE GRAND, C. J., pronounced the opinion of the court.

This action of ejectment was instituted in Charles county court, to recover a tract of land called "Myrtle Grove;" and the questions which this court is called upon to decide, arise out of the refusal of the county court, to give the instructions asked for by the plaintiff, and the instruction which the court did give.

The facts on which the court pronounced were agreed upon, and are as follows: "That the tract of land called "Myrtle Grove," is correctly located on the plots, and as located, was possessed by Francis J. Mitchell, from 1817, to the time of his death, in 1825, and that immediately after his death, his son James D. Mitchell, as devisee under his will, entered upon and possessed said land until his death, without issue, which happened in 1837, and that immediately after his, the said

James D. Mitchell's death, his widow, Elizabeth, as devisee for life under his will, entered and possessed said land until her death in 1841, and that the plaintiff is the sole sister of the whole blood, and heir at law to the said James D. Mitchell; that the tract of land as located, was reputed and known by the name of "Myrtle Grove," and was situated on Mattawoman run, and that the possession of the same, from the year 1817 to 1841, was continued, peaceable, exclusive and uninterrupted, and adverse to all persons; and that the defendant, who was a half-brother to James D. Mitchell, entered into said land at the death of Elizabeth Mitchell, declaring that it was his son's property, and that no other brother, or representative of any other brother or sister, survived the said James D. Mitchell. This agreement was entered into by the defendant, to raise the point raised on the prayers submitted by the plaintiff, and for no other purpose.

The declaration was filed on the fourth day of March 1845, and the demise is laid on the first of May 1842. The defendant rested his defence on possession solely. The main question, therefore, which is presented by the record is: Do the facts agreed upon, establish such a title in the lessor of the plaintiff, as to entitle him to recover? The instructions asked were: *First,* That if the jury believed that the tract of land called "Myrtle Grove," was held and possessed by those under whom the plaintiff claims, for more than twenty years prior to 1841, then, there is no necessity for the plaintiff to shew a patent. *Second,* That to entitle the plaintiff to recover, there is no necessity to shew that the lands in dispute were patented, provided, the jury find twenty years' possession in those under whom the plaintiff claims, prior to the institution of the suit. And *third,* That if the jury found from the evidence, that Francis J. Mitchell possessed the land in dispute, from the year 1817, to the time of his death in 1825, and that immediately upon his death, his son and devisee, James D. Mitchell, possessed the same until his death in 1837, and that immediately after his death, that his widow, Elizabeth Mitchell, possessed the same, until her death in 1841, and

that the possessions aforesaid were continued, peaceable, exclusive and uninterrupted, and that the plaintiff is the sister of the whole blood of James D. Mitchell, and that he died without issue, leaving no brother or sister other than the plaintiff, of the whole blood, then, the plaintiff is entitled to recover.

The first instruction asked, asserts the proposition, that an uninterrupted and exclusive possession by those under whom the plaintiff claims, for twenty years *prior to the year* 1841, dispenses with the necessity, on the part of the plaintiff, to show a patent for the land; and the second only differs from it in this, that it only requires the jury to find such possession for twenty years, *prior to the institution of the suit*, which was in 1845. The third prayer asserts, substantially, the same principle, and asks the court to say to the jury, that if a portion of the facts agreed upon be found by them, that then, *non obstante* anything else, the plaintiff is entitled to recover.

From the facts in the case, it appears the defendant was in possession of the *locus in quo*, from 1841, to the time of the institution of the suit, claiming it as the property of his son.

The general principles of ejectment law in Maryland, have been settled by a long series of unvarying decisions, and cannot be disturbed by this court, however hard may be their operation in particular cases. Among these, is, that the plaintiff must recover, if at all, on the strength of his own title, and cannot do so because of the weakness of that of the defendant. Another, is, that he must show that he has the *legal* title to the land, *and* a right of possession, and that he cannot establish such legal right in himself, without first showing the land has been granted by the State. The cases in 2 *H. & J.*, 125; 11 *G. & J.*, 358, and 3 *H. & J.*, 26, are full on these points. They merely affirm what has always been the law of Maryland.

But it is said, that the act of 1818, ch. 90, has effected a change in some of these doctrines, at least so far as the cases

which it embraces are concerned. Were it not for the act of 1818, on the evidence in the case before us, it must be admitted, the plaintiff could not recover, whatever might be his position, according to the decisions in England, and of some of our sister States, in which it has been held, that *priority* of and greater length of possession, is all that need be shewn by the plaintiff, when the defendant relies *solely* upon a possession of a lesser duration in point of time. See 7 *Bing.* 156; 10 *Johns.* 356; 2 *Sargt. and Rawle,* 57.

The question then, is, does the act of 1818, ch. 90, under the circumstances of this case, authorize a recovery on the part of the lessor of the plaintiff?

It is urged on the part of the appellant, with great force, and on what are deemed grounds of natural justice and public policy, that by the act in question, the State designed to surrender all title to lands possessed by any person, or body politic or corporate, or those under whom they claim, for a period of twenty years after the month of January 1819, and before action brought; whilst on the other hand, it is contended, the true meaning of the act limits its operation to *defendants*, and that it cannot be availed of by *plaintiffs*, and that it did not oust the State of its title, but merely rendered ineffectual to disturb the possession of defendants, any patent which might be granted for lands taken up under a common or special warrant, or warrant of resurvey.

We do not deem it proper, in this case, to decide all the questions raised in argument, and wish to be distinctly understood as pronouncing no opinion on the question, whether plaintiffs as well as defendants, can avail themselves of the provisions of the act of 1818, nor do we decide, whether or no, the act in the instances enumerated in it, be a *grant* or *confirmation* of title, to persons who have held for twenty years prior to bringing suit. All we wish to be understood as deciding, in this connection, is, that the act of 1818, under the *admitted* facts in this case, does not dispense with the obligation imposed on the plaintiff, to show that there is no such outstanding and subsisting title in the State, as will prevent

her recovery. The act provides: "That whenever land shall be taken up under a common or special warrant, or warrant of resurvey, any person or persons, bodies corporate or politic, may give in evidence, under the general issue, his, her or their possession thereof; and if it shall appear in evidence, that the person or persons, bodies corporate or politic, or those under whom they claim, have held the lands in possession for twenty years, before the action or actions brought, such possession shall be a bar to all right or claim derived from the State, under any patent issued upon such warrant or warrants; provided always, that nothing herein contained shall be construed to affect any title or titles, under any common or special warrant, or warrant of resurvey, where the same shall have been laid before the passing of this act."

Now if it were conceded, that this act could be availed of by a plaintiff, yet, under the facts admitted in the case, now before us, it is manifest, the plaintiff is not entitled to recover. The possession on which she relies, is embraced within the time intervening between 1817 and 1841, a period of twenty-four years. The act *expressly* excepts out of its operation, all titles arising under any common or special warrant, or warrant of resurvey, laid prior to its passage. What is there in the facts before us to show, that a warrant had not issued to the defendant, or some one else, prior to the passage of the act? Nothing. It is perfectly consistent with the facts, that either one of the warrants mentioned in the act, may have issued in 1817, or before that time; and in consequence of it and subsequent proceedings, a patent may have issued to defendant, or some person other than the plaintiff, or those under whom she claims, prior to the year 1837; and if so, under any construction of the act of 1818, it could not avail the plaintiff. The act of 1839, ch. 34, does not affect this view, it merely authorises parties predicamented as therein described, to obtain a patent on the observance of certain formalities. It in nowise repeals the act of 1818, ch. 90.

We do not deem it necessary to allude to any outstanding

title, which possibly may have arisen from an *escheat warrant*, regarding what we have said, touching the act of 1818, as sufficient to demonstrate the insufficiency of the evidence, to entitle the plaintiff to recover. We content ourselves with deciding the case before us, on its own facts; reserving, if the occasion should be presented, a full exposition of the meaning of the acts of 1818, 1839 and 1841, until a state of facts shall be before us, requiring a solution of all the important questions which they suggest.

Being of opinion, that the plaintiff did not exhibit a case negativing an outstanding title, and holding, that the uniform course of decision in this State rendered this indispensable, we discover no error in the ruling of the county court.

*Judgment affirmed.*