## PECK *v.* HEURICH.

EJECTMENT ; CHAMPERTY.

1.  A plaintiff in ejectment must prove his title back to a grant from the government; and must show possession and detention on the part of the defendant.

2.  A deed of real estate from a client to his attorney and another as trustees reciting an agreement for the conduct by the attorney in the names of himself and his co-trustee of a litigation to recover the land conveyed, in consideration of which he is to retain one-third of the proceeds of the sale of the land recovered after paying all costs and expenses and account to his client for the remaining two-thirds clear of any costs or charges whatever, is champertous and void ; *following* Johnson *v.* Van Wyck, 4 App. D. C. 294.

No. 430.   Submitted April 17, 1895.   Decided May 7, 1895.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the court in an action of ejectment. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is a suit in ejectment, instituted in the Supreme Court of the District of Columbia by the appellants as plaintiffs to recover possession of certain undivided interests in a tract of land known as Rosedale and Isherwood, situated in the District of Columbia and adjoining the northeastern boundary of the city of Washington, from which they claimed in their declaration, filed on September 10, 1892, to have been unlawfully ejected by the appellee on August 1, 1892, and to be still by him unlawfully excluded therefrom. The declaration was twice amended, the last amended declaration, upon which the trial was had, having been filed on March 27, 1894. To each of them the defendant pleaded the general issue, " not guilty."

At the trial, as appears from the bill of exceptions, the plaintiffs first offered in evidence from the land records of the District of Columbia the transcript of a deed of conveyance from one William A. Bradley to one Ann Bartlett, dated on November 8, 1828, and recorded the same day, which purported to convey the real estate mentioned in the declaration, as well as other real estate ; and thereupon counsel for plaintiffs announced that they proposed to prove that the plaintiffs and defendants traced their respective titles to the land in controversy from said Ann Bartlett as common source of title. Counsel for the defendant then and there denied that they held from any common source of title ; and no proof whetever was offered of any such common source.

Two depositions were then read in evidence on behalf of the plaintiffs to show who were the heirs at law of Ann Bartlett ; that Ann Bartlett was married on September 17, 1828, to John L. Bartlett, at New Brunswick, New Jersey,

who, it seems, was her second husband; that she died on April 3, 1876; that her said husband survived her, and died in New Jersey on September 24, 1884; and that her heirs at law were the same persons who are mentioned as grantors in these several deeds that were thereafter offered in evidence on behalf of the plaintiffs, and were refused by the court.

Upon the cross-examination of these deponents, and of the plaintiffs themselves, who testified as witnesses in the case, it was sought to be shown that the suit itself and the deeds referred to were the result of a champertous agreement between the plaintiff, Leo Simmons, and the heirs of Ann Bartlett.

Three several deeds were then offered in evidence on behalf of the plaintiffs, two of which were merely ancillary and intended to complete the principal deed. This principal deed purported to be a conveyance in fee simple from the heirs of Ann Bartlett to Ezra J. Peck and Leo Simmons, the plaintiffs in this cause, of all the real estate in the District of Columbia devised to them by inheritance from said Ann Bartlett, but in trust, however, for certain specified purposes, stated in the deed itself as follows:

" In trust, nevertheless, to and for the following uses and purposes, namely, to take and hold possession of the said real estate, and to institute and prosecute to a final conclusion in their own names any and every action, suit or proceeding in law, and in equity, or otherwise, however, for the possession of said real estate, if in their judgment expedient, and to compromise, pay for, and purchase any outstanding claim or title against said real estate, if in their judgment expedient, and generally to do any and every thing in their judgment expedient, which may be necessary to vest in them a perfect and unencumbered title in fee simple to and the recovery of possession of said real estate and upon the vesting in them of a perfect and unencumbered title in fee simple, and the recovery of the possession of said real estate or before and without the same, and without

such proceedings, acts and doings as they may think best, and at any time to sell and convey said real estate, or any part thereof, in fee simple or in any quantity of estate or estates to any person or persons, and for such price and upon such terms as they may in their best judgment consider for the interest of the parties concerned and upon such sale or sales to convey the title sold to the purchaser or purchasers without liability on the part of the purchaser or purchasers to see to the application of the purchase money and out of the purchase moneys or the full amount said property may sell for, it is distinctly understood between the parties to this indenture, that the said Leo Simmons, one of the trustees or parties of the second part, shall retain $33\frac{1}{3}$ per cent., or one-third, after paying all expenses, costs and expenditures of the said parties of the second part, in the execution of this trust, out of the same, and the other two-thirds or $66\frac{2}{3}$ per cent. of said purchase money, clear of any cost or charges whatever, to pay the heirs of said Ann Bartlett, their heirs or assigns, according to their respective interest, and it is further understood between the parties to this indenture, that should Leo Simmons die after suit has been begun for the recovery of any of said property, and before a settlement shall have been made, then in that case, the court having jurisdiction shall appoint a trustee to act in his stead and pay over to the heirs or assigns of the said Simmons such profits as he would have been entitled to after paying said cost and expenditures."

To the introduction of this deed in evidence objection was made on the part of the defendant, on three several grounds: 1. Because it was not executed, at least not completely executed, until after the suit was instituted—the deed, although bearing date on October 20, 1891, not having been recorded until November 23, 1892, which was upwards of two months after the institution of the suit (September 20, 1892.) 2. Because it was not recorded within six months after its date, and was, therefore, as it is claimed, insufficient

to pass title; and 3. Because the deed on its face was champertous, and therefore void.

Without expressing any opinion on the first or second ground, the presiding justice, in a very able opinion which is given in the brief of the appellee, sustained the objection on the third ground, held that the deed was plainly champertous in its character, and therefore excluded it from the evidence. It is a peculiar fact in this connection, although perhaps not important in the view which we take of the case, that the paper offered in evidence by the plaintiffs was not the original deed, although that must have been in their possession, but the transcript from the land records of the District of Columbia. This has been made a ground of objection to the deed, together with the grounds assigned in the record, in the argument before us.

In the oral testimony adduced on behalf of the plaintiffs it was shown that the plaintiff, Leo Simmons, it was who discovered the alleged interest of the heirs of Ann Bartlett in the property in controversy; that he had caused his discovery to be communicated to them; that he procured the execution of the foregoing deed to himself and Peck; that Peck was the husband of one of the heirs; and that he was joined in the deed as joint grantee with Simmons for the reason that the heirs wanted in the trust a person whom they knew, while Simmons, who was a stranger to them, should have the active management.

To the action of the court in excluding from the evidence the deed to Peck and Simmons, the plaintiffs duly excepted. Their counsel then "announced to the court that the refusal of the court to admit the aforesaid records in evidence broke the continuity of plaintiffs' title, and that they would therefore rest their case." The court thereupon instructed the jury to return a verdict for the defendant, which was accordingly done; and to this also the plaintiffs excepted. There was judgment for the defendant on the verdict; and from this judgment the plaintiffs have appealed.

*Mr. Franklin H. Mackey* and *Mr. Arthur A. Birney*, for
the appellants:

The Bartlett heirs were entitled to bring these suits to
recover their property, and they had an undoubted right to
employ an attorney upon a contingent fee to institute these
suits, and they also had an undoubted right to *secure* to
him the payment of his fee by joining him as trustee with
their co-heir, in whom, for purposes of convenience, known
to every lawyer who has ever had to conduct business for
numerous heirs, they desired to vest the *whole* title in trust.
Such a transaction no more savors of champerty than any
other deed where the conveyance is made to secure to an
attorney the payment of his fees. *McPherson* v. *Cox*, 96
U. S. 404, 416. Nay, if anything it is less so, for in the
latter case the deed is entirely for the benefit of the attor-
ney, while in the Bartlett deed the provision securing the
attorney his fee is but an incident, the main purpose being
the recovery of the inheritance for the heirs. It will be
observed that there is no contract on the part of Simmons
to *pay* or even to *advance* from his own means the costs of
administering the trust, much less of instituting suits in
court. Now the very *sine quo non* of a champertous con-
tract with an attorney at law is that the contract shall on its
face be an *indemnity* to the plaintiff from the payment of
costs, and an agreement on the part of the attorney to pay
them from his own purse. Taking a case on a contingent
fee, as this court declared in the Johnson case, is not of
itself champertous, nor is the voluntary advance of costs
by an attorney champertous; it is an every day occur-
rence, and it has frequently been held that if he does so
advance them he may recover them in any action brought
for that purpose. Am. and Eng. Encyl., Tit. Champerty,
p. 79.

To declare a deed of this sort void would be equivalent
to saying that hereafter no tenants in common may convey
their property to a trustee with authority to bring suit for

its recovery, or to purchase in their own names, but in trust for the grantors, outstanding titles against it, and after having done so to sell the land and out of a fixed and definite proportion of the proceeds to pay the expenses of the trust, the remainder to be retained by one of the trustees as his compensation for administering the trust. There is nothing in the deed which even savors in the remotest degree of champerty, and the most inflamed imagination would hardly seriously contend that it has any of the syndicate or lottery features of the Blodgett deed which were so severely criticised in *Johnson* v. *Van Wyck*, 4 App. D. C., 294. We submit also that in principle the case is controlled by *McPherson* v. *Cox*, 96 U. S. 404, where it was declared that "a contract to pay an attorney at law for his services in suits concerning land, if it be recovered, a specific sum *out of the proceeds* when it shall be sold by the client, is not champertous, because he neither pays costs, nor accepts the land or any part of it as his compensation."

It is also submitted that under familiar rules the court should not hold this deed to be champertous unless clearly satisfied that this is the only construction to be given it. If effect may be given to the deed by any reasonable construction, that construction should be adopted; all presumptions are in favor of the validity of the conveyance. *Bender* v. *Fromberger*, 4 Dall. 436, 440 ; *Foxcroft* v. *Mallett*, 4 How. 353, 376.

The rule of law is that all grants are to be taken most strongly against the grantor and liberally in favor of the grantee. Bishop on Contracts, sec. 414; Blackstone's Commentaries, Book II, p. 121.

*Mr. Wm. F. Mattingly* and *Mr. Leon Tobriner* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The substantial question raised by the exceptions and by the assignments of error is, whether the deed of convey-

ance from the heirs of Ann Bartlett was inadmissible in evidence either on the ground of champerty or for any other invalidity. But another question, also, of great importance, is raised by the record, and has been much insisted upon by counsel for the appellee; and that is, whether, even if there was error in the exclusion of the deed, there was not a total failure of proof on the part of the plaintiffs such as to justify the entry of judgment for the defendant in any event.

With reference to this second question, which we may consider first, it appears to us that the course pursued by the plaintiffs ought not to be sanctioned. If approved, it involves the establishment of the practice in suits in ejectment, and indeed in most other suits, that a plaintiff may try his case by piecemeal; that, if any piece of evidence, which he regards as essential or even important, is ruled out, he may abandon the trial, take the chances of appeal, and then, if successful, pursue the same course upon a new trial with reference to the next piece of evidence. And thus there would be a possibility of innumerable trials and innumerable appeals in the same suit, with the result that the administration of justice would be practically blocked. It is very true that it would seem to be a useless waste of time and effort to offer evidence, or to make formal profert of evidence, when one of the essential links in the chain has been broken and counsel are perfectly well aware that, with such link broken, there can be no recovery. But at the same time, as no plaintiff is entitled to verdict or judgment, unless he makes out a complete *prima facie* case, it is impossible, in the absence of profert of such a case, for either the court of primary jurisdiction or an appellate tribunal to determine whether he has been actually prejudiced in contemplation of law, by the exclusion of any specific piece of evidence.

Assuming, for the present, that it might have been error to exclude the deed in controversy, yet the plaintiffs were not thereby prejudiced if for any other reason they were

not entitled to recover. They began their proof with the introduction of a deed from one William A. Bradley to Ann Bartlett; but there is nothing to show that Bradley had any title, or was ever in possession, or had any right to the possession of the property, or that the State had ever granted the property. This is an insufficient basis of title (*Mitchell* v. *Mitchell*, 1 Md. 44, 52), and if the plaintiffs had in all other respects fully proved their case, it would not necessarily follow that they would be entitled to recover.

Possibly in reference to old titles, such as that involved in this suit may have been, it may be difficult, if not impossible, to deduce a complete chain of title from the State; but that it is a difficulty for legislation to obviate; and the difficulty may, in many cases, perhaps in most cases, be removed by proof of possession in the person from whom the title is sought to be deduced. It is obvious at all events, that, inasmuch as any one may make a deed with or without title, some testimony is required either to show a grant from the State, or possession under claim of title from which such grant may be inferred. There was nothing of the kind here.

It is true that counsel for the plaintiffs announced to the court that they proposed to prove that Ann Bartlett was the common source of the title both of the plaintiffs and the defendants; but the fact was denied at the time by the counsel for the defendant, and the proof was never made or offered to be made. Such announcement, therefore, amounted to nothing.

Again: It was alleged in the declaration that the defendant unlawfully detained the property from the plaintiffs. The plea of the general issue placed upon the plaintiffs the burden of proving that the defendant was in possession. No such proof was given, or offered to be given. Without it, the plaintiffs would not have been entitled to recover against the defendant, even if they had in all other respects fully proved their case.

It does not follow that the judgment was erroneous be-

cause the deed in controversy may have been improperly excluded. In order to reach that conclusion, we must assume that the plaintiffs would have proved the residue of their case by wholly unobjectionable testimony : and this is what we have no right to assume.

We think it was due to the plaintiffs themselves that their cause should have been fully set forth ; to the defendant, that he should not be vexed with repeated trials for the settlement of questions that might be all settled in one trial ; and to the court, that its judgment should have the stability resulting from a full presentation of the plaintiff's claim.

But we do not deem it necessary to base our decision on this ground. The court below based its decision on the ground of champerty ; and there seems to be no reason why we should seek to avoid the determination by us also of that issue.

It is quite apparent that the practices known by the designation of champerty and maintenance are not obsolete in the District of Columbia : and it is equally apparent that there is no good reason why the law in regard to them should be held to be of less binding force now than at any former time. Many things, it is true, that were once regarded as champertous or savoring of maintenance, are no longer so characterized with us. Deeds by parties out of possession, for example, are not now void for that reason. It is now lawful to stipulate for contingent fees. And it may be even meritorious to aid the poor with money in their effort to recover just legal rights by means of legal proceedings. But from the fact that some of the things which were once reprobated on some peculiar ground of existing public policy are now regarded as perfectly legitimate in view of the altered conditions of society, it does not follow that the law regarding champerty and maintenance has therefore been abolished.

In the recent case of *Johnson* v. *Van Wyck*, 4 App. D. C. 294, we said : " Unnecessary and speculative litigation,

the promotion of inexcusable strife, the vexation of land-
holders, and the laying of embargoes on the free aliena-
tion of their holdings are as pernicious now as they ever
were and as needful of redress. Contracts which tend to
promote these evils are as much opposed to sound public
policy as they ever were, and therefore ought not to be en-
forced."

In that case, we also said, in reference to the definition of
what constitutes champerty, citing from approved and well
recognized authorities on the subject: " ' Champerty is the
unlawful maintenance of a suit in consideration of an agree-
ment to have a part of the thing in dispute.' 1 Hawk. P.
C. 545; Co. Litt. 368. It has also been defined to be ' a
bargain to divide the land or thing in dispute on condition
of his carrying it out at his own expense.' *Stanley* v. *Jones*,
7 Bing. 369. These definitions have been very generally
approved. *Roberts* v. *Cooper*, 20 How. 467 ; *Brown* v.
*Beauchamp*, 5 T. B. Monroe, 415."

In the case of *McPherson* v. *Cox*, 96 U. S. 404, relied on
by the appellants to take the case now before us out of the
operation of the law in regard to champerty, the Supreme
Court of the United States, while holding the contract
there under consideration not to be champertous, clearly
indicated what it did regard as champerty. It is said in
that case by Mr. Justice MILLER: " It is said that the con-
tract is obnoxious to the doctrine of champerty. The
answer is, that the attorneys did not agree to pay any of
the costs ; they did not agree to take any part of the land,
which was the subject of the suit, for their compensation ;
nor did they agree to take anything but money. The sin-
gle fact that they agreed to wait for their money until com-
plainant could sell the land, and to receive a fixed sum out of
the purchase money, does not, under any definition of
champerty, bring it within that principle."

In the case before us, it seems to us that the attorney
did all the things which are in these authorities enumerated
as champertous. He agreed to pay the costs of the litiga-

tion ; he agreed to take as his compensation a part of the land which was the subject of the suit, or a part of the proceeds of sale of it, which amounts to the same thing ; and his compensation was not a fixed sum of money, payable out of the proceeds of sale, but a contingent share of the very thing to be recovered or of the money that might be received by way of settlement or compromise. And the character of the enterprise on the part of the attorney was so plainly a speculative one, that in the deed the net results to him are mentioned as "*profits*." If this be not champerty, we fail to see wherein there can be champerty. For we are not willing to limit the law, as the argument for the appellant would seek to have us do, to such extreme and we may even say, fantastic enterprises as were developed in the case of *Johnson* v. *Van Wyck.* We must regard an agreement by any attorney to undertake the conduct of a litigation on his own account, to pay the costs and expenses thereof, and to receive as his compensation a portion of the proceeds of the recovery or of the thing in dispute as obnoxious to the law against champerty. And that this was the character of the arrangement in the present case, we are entirely satisfied.

The very thing in dispute was conveyed or sought to be conveyed, in advance to the attorney and an associate for the express purpose of enabling the attorney to conduct the litigation on his own account and at his own cost and expense ; and in consideration of this, he was to retain, at the end of the litigation, one-third of what had been conveyed to him, and was to account to his clients for the other two-thirds. This was certainly an agreement on his part to take as his compensation a part of the thing in dispute ; and it does not alter the case at all that the land, when recovered, was to be sold. That was only the practical mode for a division of proceeds between the parties to the enterprise.

There was considerable argument on behalf of the appellants expended in an attempt to show that the deed,

which contained the agreement of the parties, did not expressly provide for the payment of the costs and expenses of the litigation by the attorney ; and that he might be regarded as advancing the costs in the shape of a loan to his clients.    It may be admitted that the contract contains no express covenant that the attorney shall pay the costs of litigation.    But no express covenant for that purpose is required, if that was the necessary result of the contract. The title, so far as the clients had title to convey, was vested in the attorney and his co-trustee for the express purpose of instituting suits in their own names and in their own rights ; and if the contract were wholly silent on the subject, the plain inference would be that they should pay the costs and expenses.    Costs and expenses were to be paid ; costs· and expenses, we presume, were paid ; and plaintiffs are primarily liable for such costs and expenses.

But we are not left to this inference alone ; nor is the contract silent upon the subject.    The express provision of this document is that Simmons shall retain one-third of the proceeds of recovery "after paying all expenses, costs and expenditures," and that the heirs of Ann Bartlett shall receive two-thirds of such proceeds, " *clear of any costs or charges whatever."*    The plain import of this is that the heirs of Ann Bartlett shall be at no cost or expense whatever ; and that Simmons shall receive one-third of the proceeds of the recovery, after he has paid the "expenses, costs and expenditures."    In other words, his right to the receipt of his compensation is dependent on his previous payment of costs and expenses ; and such payment was necessarily part of the consideration for the compensation which he was to have.

We are unable to distinguish this case in principle from that of *Johnson* v. *Van Wyck ;* and we think the court below was entirely right in applying the law of that case to the present suit.

It may be proper for us to say that in nothing that we have here said is it our purpose to reflect on the honor or

integrity of Mr. Simmons, the attorney in this case, who as such became one of the plaintiffs. His course throughout seems to have been straightforward and above-board ; and while we must regard his action as illegal and his contract as null and void, we presume that there was here only a misapprehension of the law, and not an intentional violation of it.

In view of our opinion, as here stated, with reference to the main objection urged against the admissibility of the deed here in controversy, it is unnecessary to discuss the other grounds of objection that have been taken to it. For, if the deed was null and void from the beginning by reason of its champertous character, as we think it was, the questions that have been discussed as to the time of its delivery and the effect of its registration with regard to the admissibility of the recorded transcript in the place of the original deed, become unimportant, notwithstanding that they are in themselves questions of serious import.

We are of opinion that the court below was right in refusing to admit in evidence the deeds from the heirs of Ann Bartlett to the plaintiffs in this cause ; and that it was right in directing a verdict and rendering judgment thereon for the defendant. And *that judgment must therefore be affirmed, with costs. It is so ordered.*