# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed July 1, 1908.

FREDERICK J. CREAN ET AL.
VS.
PETER McMAHON.

*S. S. Field, John E. Dempster* and *Frank Driscoll* for plaintiffs.

*Thomas G. Hayes* and *Henry J. Broening* for defendant.

STOCKBRIDGE, J.—

I feel constrained to hold the attempted tax rate introduced in evidence in this case, and upon which the title of the defendant rests, void upon two grounds:

1. The character of the notice given. The only evidence to show what this notice was, is that which is contained in the report of the Tax Collector to the Circuit Court, in which he says: "If this bill is not paid within thirty days from delivery, it will be subject to distraint or execution," and that contained in the exhibits filed with the report in which the notice is couched in terms exactly those mentioned in the report of the Collector.

This notice, if it can be called a notice at all, was merely a statement of what was the law applicable to taxes in arrear at any time after such taxes had become in arrear. It nowhere disclosed to the person from whom the taxes were claimed to be due any "intention" on the part of the Collector to take any particular action with regard thereto, looking to the enforcement of the payment.

City Code, 1879, Art. 49-44 Ord.

The provision of the local law was plain. It provided specifically for a notice to be given of the intention of the collector to enforce payment before advertising the property for sale, and thereby give an opportunity to the delinquent taxpayer to save his property from the extreme and harsh measure of being divested of it. To say that the notice reported to have been given in this case gratified the statute does not appear to the Court tenable.

2. The place of sale was not that which was authorized by law. The report of the Tax Collector states the sale to have taken place "at the Exchange Salesroom," and no evidence has been offered to contradict this statement in the report. At the time when the sale attempted to be set up in this case took place, the local law was entirely silent as to place of sale, but it was provided by the General Law of the State Code, 1860, Art. 81, Sec. 49, Code, 1878, Art. 11, Sec. 49, that sales for the non-payment of taxes should be made "either on the premises or at the courthouse door of the county or city."

The general law, thus by its express terms, fixed a place where such sales should be made in the city of Baltimore, and there being no local statute or ordinance which named any other place, even assuming that it could have been done by an ordinance, it was incumbent on the Collector to make the sale at the place fixed by statute in order to make the sale valid. It is argued that it was a long established practice upon the part of successive City Collectors to make sales of property for the non-payment of taxes at the exchange, and this argument seems to be borne out by the fact that the report of the collector of this sale, which is on a printed

blank, had the words "at the Exchange Salesroom" printed in as part of the report. But all of this tends only to establish a usage not warranted by law, and such usage, even though long continued can not form a basis upon which to build a legal right. The case of Taylor vs. Forrest, 96 Md., 529, establishes this conclusively.

The proceeding under which the attempted tax sale was had being thus defective in two important, even vital particulars, it becomes necessary to discuss how far, if at all, the so-called curative Act of 1904, operated to remedy the admitted defect in the deed to the Mayor and City Council, since even had the deed been executed by Mr. Webb, the Collector, who made the sale, no title would have passed under it to the municipality. And since the Municipal Corporation never acquired any valid title, it, of course, follows that it could not convey one to the defendant in this case.

A verdict must, therefore, be rendered for the plaintiffs, but the extent of their recovery involves several questions.

The first of these is as to the proper fractional part to which each of the plaintiffs are entitled under the phraseology of the will of Edward Burns. By the instrument the property was given to Charles and Catharine Crean during their natural lives, "and immediately after the death of the survivor" then "unto the living issue of the aforesaid Charles and Catharine share and share alike.

It needs no citation of authorities to sustain the proposition that our law favors the early vesting of estates, and that upon the death of the testator, life estates were created in Charles and Catharine, with remainder over in their children.

Charles and Catharine had six children, four of whom are plaintiffs in this suit, and one of those who is not a plaintiff was born after the death of the testator, Burns. If Joseph B., who was born after the death of the testator, was entitled to an equal share with his brothers and sisters, then each of the present plaintiffs is entitled to one-sixth, if not, each is entitled to one-fifth.

It is, of course, true that the testator could not have had in mind when making his will, Joseph, who had not then been born, and as already noted that the shares of the others were vested estates upon the death of the testator. The question, therefore, is whether the remainders will open so as to let in the after-born Joseph.

The language of this particular clause will admit of either construction, and in such a case the Court must look to the entire instrument to gather the intention of the testator. A perusal of it leads the Court to the conclusion that the purpose of the testator was that of equality, as among the children of Charles and Catharine, and in such a conclusion, unless the Court holds that Joseph can be let in, it defeats the principal of equality. I must therefore hold that each of the children living at the time of the death of the last life tenant were intended to be the beneficiaries of the testator, and that therefore each of the present plaintiffs is entitled to a one-sixth interest, or in the aggregate the present plaintiffs are entitled to two-thirds.

A second matter not argued by counsel, but which in the view of the Court is of importance to the entry of a proper verdict in this case is this: The property, as held by Edward Burns, and during the time it was in the possession of Edward and Catharine Crean, was subject to an annual ground rent of $240. As offered for sale by the Tax Collector, and attempted to be sold by him, it was in fee, and the defendant, the present holder has been in possession as of fee property, under the color of the tax sale for more than the statutory period to acquire title by adverse possession as against the owner of the fee, but not as against the owners of the leasehold, the present plaintiffs, whose title only became fully completed upon the death of the last surviving life-tenant in September, 1889. What is the nature of the estates recoverable by these plaintiffs, a fee or leasehold?

It is elementary that a plaintiff in ejectment recovers on the strength of his own title, not on the weakness of that of his adversary.

Mitchell vs. Mitchel, 1 Md., 44.

But these plaintiffs have offered no evidence to show that they ever were

entitled to more than a leasehold estate.

Can then the Court enter under the declaration in this case a verdict for a leasehold estate merely, or should it be for the fee, or should it be simply for the property described in the declaration leaving to future litigation the determination of what the estate is?

Manifestly, the last form suggested would tend to promote litigation when the aim of the Courts is to make decisions in such form as to avoid successive litigation over the same subject matter.

With regard to the first two forms suggested, it has been held that the particular estate or interest should be designated by the verdict.

15 Cyc., 177.

Koon vs. Nichols, 63 Ill., 163.

Beranek vs. Beranek, 113 Wis., 272.

It is true that in both of these last-named cases there were statutes in the States which required the estate or interest to be designated in the verdict, and that there is no corresponding statute in this State.

But there is also a well established principle independent of statute which leads to the same conclusion. In an action of ejectment while a plaintiff may not recover more than he claims, he may recover less, that is, have a partial recovery. Such is the English rule as laid down in Doe vs. King, 6 Exch. 791, and recognized and adopted in this country.

Harrelson vs. Garvis, 39 S. C., 14.

Allen vs. Trimble, 4 Bibb (Ky.), 21.

15 Cyc., 181, and numerous cases there cited.

And the Court does not perceive any material difference in principle between a recovery of a portion of the land claimed by a plaintiff, and the recovery of a lesser estate in the lands claimed by the plaintiffs.

Indeed such a conclusion is directly in consonance with the claim of the present plaintiffs. They are not asking to recover the entire property, but only an undivided interest therein. They may, therefore, be entitled to a verdict, even as to that part claimed by them, not of the entire interest in the property, but to a lesser estate, to wit, a leasehold therein and such a verdict will, therefore, be rendered.

But these plaintiffs claim and are entitled as damages to the mesne profit in the property. They have presented the Court with their calculation which will be filed with the papers in the case. The Court cannot, however, concur in the calculation, but in lieu thereof, determines the mesne profit for which a judgment will be rendered, as follows:

| | |
|---|---|
| Rentals recd. by Deft., Sept. 14, 1889, to February 7, 1904, 173 months, at $45 per month | $ 7,785 00 |
| Rental received October, 1904 | 60 00 |
| Rental received Nov., 1904, to July 1, 1908, 3 years 8 mos. at $115 per month | 5,060 00 |
| | $12,905 00 |

| | | |
|---|---|---|
| Amt. paid Tax Collector, 1884 | $ 1,300 00 | |
| Amt. paid Improvements, 1884 | 1,600 00 | |
| | $ 2,900 00 | |
| Int. on same, Sept. 14, 1889, to Feb. 7, 1904, 173 mos. | 2,508 50 | |
| Improvements after fire, less insurance collected | 3,000 00 | |
| Int. on same to July 1, 1908 | 675 00 | |
| Water Rent. 1890-1904 | 90 00 | |
| Water Rent, 1904-1908 | 40 00 | |
| Insurance 1890-1904 | 75 00 | |
| Insurance 1904-1908 | 100 00 | |
| Taxes, 1890-1904 | 1,517 12 | |
| Taxes, 1904-1908, July 1 | 390 00 | |
| Street assessment | 101 00 | $11,396 62 |
| | | $ 1,508 38 |

Of which 2/3 are $1,005.58, for which amount a verdict will be rendered.